Good morning, your honors. May it please the court, my name is Derek Anderson. I represent the appellant Tammy Franks. I'd like to reserve three minutes for rebuttal. What this case boils down to is that the district court failed to apply the appropriate standard of review by failing to review the evidence in the light most favorable to the appellant and also by failing to draw reasonable inferences from that evidence that would support a finding of discrimination and hostile work environment. The reason that is, is because the proffered reasons by the city are not credible when looked at in conjunction with the evidence presented by the appellant. First of all, the appellant presented evidence that there's a contradiction between the chief of police, Carlos Rojas, and the city's human resources manager, Anita Queen, regarding notice of the prior complaint. And that's very significant because if Chief Rojas was aware at the time the complaint was received in 2014 that it was the same as the complaint received in 2011, and that complaint had been submitted essentially to harass Tammy Franks, then there would have been no basis to put her on administrative leave and to subject her to the pattern of treatment that she was subjected to thereafter because he would have had doubt and known that that original complaint as well as the subsequent complaint were false. There's also evidence that Chief Rojas was aware that the employee who submitted both complaints against Tammy Franks had threatened her, although Chief Rojas denies that. However, there's a clear difference between the evidence presented by Tammy Franks in which she clearly states that Chief Rojas, who was her direct supervisor at the time the 2011 complaint was received, that she came to him and complained and said, this employee is coming to me and saying I've got things hanging over your head and you better not to, quote, fuck with me or else I'm going to get you. So Chief Rojas was aware that this employee had previously made these threats against his supervisor and based upon the fact that he knew that, the fact that he immediately requested the prior complaint upon submission of the 2014 complaint shows that he actually did know those things were related, although he denied it. That raises a very strong inference that his stated reasons for placing her on leave were not credible because he knew at the time the 2014 complaint was received that it was not worthy of credence. Chief Rojas also requested the prior complaint immediately upon being notified that the 2014 complaint had been received. That makes absolutely no sense that he would request that complaint without speaking to anybody else unless he thought those two things would be related. The previous chief of police, Paul Walters, also testified that he had believed that the 2011 complaint had been investigated and determined to be without merit. And that's also significant because Chief Rojas, to justify his decision to take adverse action against Tammy Franks, claimed that he didn't think that the prior complaint had been investigated. And that therefore justified placing Tammy Franks on administrative leave and thereafter conducting an investigation. The Human Resources Director, Anita Queen, also testified that she notified, initially notified the city's Human Resources Chief, Ed Raya, of the complaint. Although Ed Raya testified that he was notified of the previous complaint by Chief Rojas. Again, these are significant contradictions that give rise to an inference that the city was not credible with respect to the reasons that they gave for placing Tammy Franks on administrative leave. And that lack of credibility supports an inference that they're essentially dissembling to cover up a discriminatory motive. There's also a significant discrepancy between Ed Raya and Chief Rojas regarding when they talked about the similarities of the two complaints. Mr. Raya testified that this is something that I discussed with Chief Rojas at some point after the investigation had been going on for a while, after receipt of the 2014 complaint. Although Chief Rojas testified that he discussed the similarity between those complaints immediately when the investigation was undertaken. It's also not credible. Chief Rojas' explanation that he needed to place Tammy Franks on administrative leave and have this complaint investigated was also not credible. In light of his subsequent decision to remove her from administrative leave. Even though he testified that I didn't think the investigation was complete and the city had a duty to complete that investigation. It makes absolutely no sense that he would release an employee to go back to work if he felt a thorough investigation had not been completed. And the city had a duty to protect both the person being accused as well as others who may have been harassed by her. If he felt that those people were somehow at danger or anything like that. Based upon all of the foregoing factors, it gives rise to a tribal issue of material fact that the reasons offered by the city for taking adverse action against Tammy Franks by putting her on administrative leave were simply not true. And that requires denial of summary judgment because there's a tribal issue of material fact about whether or not there was a valid reason for doing so. And the lack of credibility supports an inference that there was a discriminatory motive for doing so. With respect to the hostile work environment claims, the appellant also presented evidence to draw an inference of harassment based upon numerous factors. First of all, placing her on administrative leave without even conducting a preliminary investigation. Which the record is clear, had never been done before for any employee, much less an employee who was accused of misconduct through an anonymous letter. The chief and the city also failed to provide an investigative file that the appellant was essentially begging for to be able to clear her name when the record is clear that as a matter of policy, the other employees accused of misconduct were provided those investigative files immediately upon the conclusion of their investigations. How long did it take before she was able to get the investigatory file? It took three months, Your Honor. Even worse than the investigative file, the appellant and her attorney were both requesting, shouting from the rooftops, please notify the 50 employees who are under non-contact orders with me that this investigation has been concluded. Yet in spite of requesting that repeatedly over a significant period of time, that announcement was not made to those employees for a period of five months. And that's really significant when you put this in the context of talking about a command staff member of a police department who needs to have the belief of her subordinates and needs to know that her subordinates need to know that she is credible and that she's someone that they can trust. With all of these allegations swirling around, and in spite of the fact that an investigation had been completed, that she had not committed misconduct, it would have been very easy for the city to simply tell people the investigation is completed and there were no findings. Yet in spite of that, they failed in spite of repeated requests to even make that very simple announcement. Commander Franks was also the only employee ever subjected to a blanket non-contact order, as opposed to a non-contact order that said simply you're not to discuss the case. And as a result of that, it's very easy to understand why she wouldn't be able to perform in her role, because essentially people were afraid to go up to her, lest they might get in trouble, for violating an order from the chief regarding his very broad non-contact order. The claims of the chief about not being aware that plaintiff was experiencing trouble upon her return to work are also not credible, to the extent that, like I said, both plaintiff and her attorney had contacted not only the city attorney, but they had also contacted the chief himself and mentioned the problems that he was having, and he didn't deny receiving that request from them. Yet in spite of that, he did absolutely nothing for a significant period of time. The fact of the matter is the city knew about the intolerable conditions that Commander Franks was being subjected to, yet they did absolutely nothing about it. And in that context, that supports her claims for hostile work environment, and relatedly it supports her claims for constructive discharge, because as I mentioned, as a commander in a police department, she needs to have credibility not only with her superiors, but also with her subordinates, and the record is clear that, and even Chief Rojas agreed with those statements, and that she also would need to feel that the city had her back, and would back her up if she was put in a difficult position. That's part and parcel of the nature of police work. In order to be an effective police officer, and especially an effective police commander, the city needed to have Commander Franks back. And in this case, they showed over a period of eight months that they did not have her back. In fact, it was quite the opposite. Over a period of eight months, what they did to her was that they denied her employee benefits, put her on leave. She was shunned and avoided by coworkers based on allegations she could not dispute, and which were not shown to be lacking in credibility until more than five months after the investigation had been completed, and she was subjected to humiliation that was so severe that she was required to seek medical attention. It's interesting, and this is more anecdotal than anything, but the trial court judge, when we were arguing at summary judgment, he asked me, and this is the record at 479, he asked me, would you agree the world has changed quite a bit in the last 25 years with respect to acceptance and identification of gay people? And as a general proposition, I agreed with him, although in this case there was significant evidence before him that this particular woman, this particular gay person, was treated differently than every other employee of the Santa Ana Police Department when she was charged with misconduct. And all anybody has to do nowadays is turn on the news, and one of the leading stories that you're going to hear is going to be about rampant harassment, discrimination, and things of that nature in the workplace. What I'll say is one of the great highlights of my career is I have a published decision from this court that was authored by Harry Pregerson. And Harry Pregerson, he let his jurisprudence be guided based on the recognition of the dignity of each person. The record is very, very clear in this case, that the dignity of Tammy Franks as a police commander for the Santa Ana Police Department was not recognized, and there's significant evidence that the city was dishonest regarding the reasons that it put her on administrative leave and the reasons about not giving her the administrative file, not notifying the employees under non-contact orders, and not doing the very simple and basic things that she was asking for and that the chief said he actually would have done had those things come to his attention. As a result of that, she was humiliated. She wasn't able to do her job, and that's the exact sort of behavior that both Title VII and FEHA are designed to protect against on behalf of people like Tammy Franks who have a protected characteristic. I think you wanted to save four minutes, and you're down to two. Thank you, Your Honor. Thank you. Thank you. Good morning, Your Honors. Diana Field representing the city of Santa Ana, Apelli in this case. As I listened to Mr. Anderson's argument, I was struck by the complete lack of recognition of the standard in this case when applying the burden-shifting standard to a discrimination case, which is Ms. Franks needed to present substantial and specific evidence. The district court was very clear in its order that the evidence that was submitted did not come close to inferring that any action was taken against her on behalf of either gender or sexual orientation. There seems to be no dispute with the law that was cited by the court or the law that was cited in our briefs that the burden-shifting standard applies and that the city didn't. But we're on its pretext, right? We're on pretext, yes. And that is what the substantial and specific burden applies to, and not so much a totality of the circumstances that appellant would ask the court to buy into. That is not the standard. I know it was put in the brief, and it seems to be what is being enunciated here, but it is specific and substantial evidence. And I would like to cite the court to a recent case of August in this circuit called Merrick. Is that in your brief? I'm sorry, it's not in the brief. It came out in August of this year. Did you submit a 28-J letter? I'm sorry, I did not. Okay. Could you just write down the site for the case and hand it to the clerk afterwards? Yes, I will. And this case had to do with an age discrimination case and applying the specific and substantial evidence burden. And it indicated that the plaintiffs are often fond of quoting the standard for summary judgment articulated in the Chuang case versus the University of California Davis Board of Trustees. And in this case, because the plaintiffs like to cite the burden, that it's a very minor burden to get past pretext. Well, I think they're making a more modest argument. And I think what they're saying is that there's a genuine dispute of fact, of material fact, as to pretext. Yes, but I think in order to do that, you have to prove it at the summary judgment stage. They just have to show that there's some genuine factual issues in dispute. But in order to do that, you need to meet the burden of specific and substantial evidence. You can't just come in and hang your hat on the argument. There is no other reason that we can cite to the court other than Ms. Franks is a lesbian and Ms. Franks is a woman. There is nothing to infer from the record that any action was taken against her because of her gender, because she was a woman or because she was a lesbian. If you look at the record and the declaration of Chief Rojas and Commander Revere, you will see that throughout her career, nothing but praise and commendations were reaped upon Ms. Franks by Chief Rojas. And with regards to the investigation, what is seemingly being asked of this court is that because she was a commander and a high-level position, she has some type of special standing or immunity from investigation. And Mr. Anderson himself brought up what's going on in society today. We see people, very high-ranking, we see congressmen, we see national news people, we see very high-ranking CEOs being accused of conduct that was the type of conduct that was in this anonymous complaint. You can't just say, this person has a special standing, this person wears a white hat, I like this person better than the person I think made the complaint. You have to engage in an unbiased, fair investigation, and there has to be an investigation. And their argument seems to be there should have been no investigation because of her status, because she was the person who was liked at the department by the chief. Counsel, didn't the complaint itself, it was actually about how her status as a lesbian was affecting the workplace? Are you talking about the anonymous complaint or her filed complaint? The complaint itself. Well, I don't know what you're talking about her filed complaint. The complaint, the anonymous complaint that triggered the investigation. The anonymous complaint was very broad in its allegations. It alleged departmental policy violations, it alleged workers' compensation fraud, it alleged abuse of her position with regards to... Are these documents under seal, by the way? Many of the documents are under seal, it's primarily the deposition testimony. Okay. The anonymous complaint implicated known and unknown witnesses and victims. So it was very, very broad in terms of what it was alleging, and it is not something that the department could ignore and say, well, we like Tammy Frank, so we're not going to have an investigation. That would not be the proper action for the chief of police. So he did what he could in terms of removing himself from the investigation because he was a friend of Tammy Frank's. Yes, but the point I'm trying to make is you're saying there was no, she wasn't treated differently because she was a lesbian, but the complaints, the anonymous complaint and the Revere memo, talk about what she did as a lesbian as what they are complaining of. Well, that doesn't mean she was treated differently by the department because of it. Those are the allegations that were written in the complaint. That doesn't mean the department acted against her in a different way because of that. She was treated exactly as other investigations were treated, and she was given her information with regards to the conclusion of the investigation in a very timely manner, much more timely than other investigations. If you look at the declaration of Chief Rojas, if you look at the declaration of Christopher Revere, if you look at the declaration of Ed Rea, they go through several instances where white males were investigated by the Human Resources Department, and they received far less material than Ms. Franks did, and some of those investigations took five months or longer. Did they get put on leave immediately? This was a case. Did they get put on leave immediately, like Ms. Franks did? No, but the allegations were different. And were they issued a blanket non-contact order as opposed to a you're not supposed to discuss the investigation but could still talk about other subjects? That detail I do not know, but it is the practice to issue an order instructing the focus of an investigation to not discuss the investigation with any witnesses. Well, here's Rojas' depo, not aware of any other employee placed on administrative leave based on an anonymous complaint, and non-contact is generally only with respect to the investigation. And Ms. Franks' order was modified to state that shortly after she was placed on leave. And there is an instance of a high-ranking city female being placed on administrative leave immediately who was an employee of the city. She was not an employee of the police department, but she was an employee of the city. Is that in the record? That is in the record. That is in Christopher Revere's declaration. And with regards to the statements that were made, oh, and Ms. Franks did receive the redacted version of the investigation on June 28th. She was brought back to work. She came back on May 12th. She received the investigation, the redacted version on June 12th, along with a letter from the city attorney saying the allegations against you have been deemed to be unfounded. Now, the city is in a position where this is information that is in a police officer's personnel file. They cannot, without an express waiver by Ms. Franks, release information from her personnel file. That is California statute. They are bound by that. However, Ms. Franks, she has this letter. She has the redacted investigation. She was free to disseminate that to anyone she wanted. But she never... Asked the department to disseminate it? She, her attorney sent a letter saying she needs to be publicly exonerated. However, the city cannot do that without a waiver of her confidentiality. That is California statute. Did they ask for a waiver? Did the city ask for a waiver? Yeah. No, the city did not ask for a waiver. Ms. Franks worked internal affairs for a number of years. This statute, this requirement was not foreign to her. She was very well aware of it. And she did not present the waiver. She had the letter from the city attorney. She had the investigation, the redacted version. She could have shared with anyone she wanted those documents. The city cannot. I'm sure the city told her that when they gave her the letter saying she'd been exonerated too, right? I'm sorry? The city told her in the letter of exoneration, you can tell anybody you want to. Did the city tell her that? The letter from the city attorney says the allegations have been deemed to be unfounded. Go tell the whole world. Did it say that? It did not give her instructions what she could do with it. No, Your Honor, it did not. And did it say, we can't tell anybody because we don't have a waiver from you? No, it did not say that. But, as I said, Ms. Franks worked internal affairs for several years, and she appeared on these kind of motions that seek information from peace officer personnel files that she is very well aware the city can't disseminate this information. And they never had in the past. They had never done that in any investigation. They don't release the- They could not have said anything to the 50 employees on the no-contact list that the allegations were unfounded, the no-contact order is rescinded. They cannot send out a letter to 50 employees saying the allegations are unfounded because that is disclosing the conclusion of the investigation, which is confidential in her personnel file. What about the no-contact order is rescinded? That was ultimately done. Yeah, after five months. That is true. However, in this type of investigation, the- and it's in the declaration of Chief Rojas and Christopher Rivera and possibly in Ed Rea that with regards to these kind of investigations, when they're over and someone is returned to work, the orders just dissipate. Never before in the history of the department has there been an order sent out rescinding an order. It's not mandated. It's not policy. It's not- This is a different kind of order than never before in the history of the department. It's been issued according to the testimony. Well, that is the testimony according to Ms. Franks. No, I think it's Rojas. I was looking at all their depositions too. Well, the order was modified to be the standard order that goes to any employee who is the focus of an investigation. You will not contact witnesses or discuss the case with anybody until the conclusion of the investigation. Now, I would like to touch briefly on the hostile work environment claims because the argument is made that she was subjected to intolerable conditions. I think that you need only look at her performance evaluation from the year 2014, which was it evaluated her performance for the time period in which she was off of work for three months, and then she came back. She was actually given a bonus assignment when she came back, a very coveted assignment to work with the district attorney's office on cold cases, and she worked through her retirement, wrote her own evaluation, speaking about all of the things that she accomplished, all of the progress she made, how she ran her department, and it was her best evaluation basically of her career. You cannot have intolerable conditions that force you from a job and perform at the top of your game. Those two things are inconsistent, and if you look at the performance evaluation that's in the record, you will see her own statements as to how she was interacting with other agencies. She was leading her department. She was accomplishing the goals of her department and receiving her best evaluation ever. That is not the facts of a constructive discharge, and we would submit for the court that Judge Shelna's order and his analysis of the lack of evidence leading to his granting of the summary judgment should be affirmed in that she never tied any action to her based on her gender or orientation. She just said, there's nothing else I can point to, so it must be this. And in citing one of Judge Gould's cases, the France case, that had to do with a border patrol agent in an age discrimination suit where it was reversed on summary judgment, that was a case that included direct and indirect evidence. Here we have only indirect evidence, and I think Judge Gould found that to be a close case in writing his opinion, but he was able to cite direct evidence to infer discrimination against the border patrol agent where there were discussions had with him about his retirement, and there were statements made in staff meetings that they wanted young, energetic border patrol agents. But here we have nothing but circumstantial evidence. All right. Thank you, counsel. First of all, Your Honors, there is direct evidence of discrimination in the form of the male deputy chief who is accused of abusing his position to have sexual relationships with four female subordinates under the guise of mentoring, and the record is clear that that individual was not subject to being placed on administrative leave without a preliminary investigation or the same things that Commander Franks was subjected to. Now, with respect to the issue about whether or not there is any evidence that this is related to her gender or her sexual orientation, Judge Wardlaw asked a great question and pointed out the fact that the anonymous allegations that were made against Commander Franks were based upon her status as a lesbian, and following those allegations she was immediately subjected to treatment that was distinctly different from all of her male and heterosexual colleagues. And so that in and of itself shows that she was treated differently as a result of allegations of misconduct relating to her status as a lesbian. Now, to the extent the evidence allows an inference that the proffered reasons given by the city were not credible, that gives rise to a tribal issue of material fact regarding whether or not her treatment was based upon discrimination and rose to the level of harassment. In this case, it's very clear that nobody was treated the same way that Commander Franks was treated. She was the only one placed on administrative leave without a preliminary investigation. There's no record that anyone else had to wait several months for their investigative file. There is no evidence that anyone else was ever subjected to a blanket non-contact order. There is no evidence that any other employee had to write the city attorney and the chief of police and wait five months to have the non-contact orders rescinded and let it be known that they had not committed any misconduct. We submit. Thank you. All right. Thank you, Counsel. Franks v. City of Santa Ana is submitted.
judges: Wardlaw, Gould, Collins